WEILL (MANHATTAN FIRE INS. CO. v.). See Case No. 9,022.

---

## Case No. 17,362.

### Ex parte WEIMER et al.

[8 Biss. 321; 7 Reporter, 38; 11 Chi. Leg. News, 65.] [1]

Circuit Court, E. D. Wisconsin. Nov., 1878.

EFFECT OF PARDON — OTHER OFFENSES — FORFEITURES UNDER REVENUE LAWS.

1. The recital of a specific, distinct offense in a pardon by the president limits its operation to that offense, and such pardon does not embrace any other offense for which separate penalties and punishments are prescribed.

2. A pardon from sentence for conspiracy to defraud the revenue, does not entitle the defendant to demand cancellation of a judgment of forfeiture for fraud upon the revenue.

Murphey & Goodwin; for petitioners.
J. C. McKenney, for the United States.

[Before HARLAN, Circuit Justice, and DYER, District Judge.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 7 Reporter, 38, contains only a partial report.]

DYER, District Judge. On the 23d day of June, 1875, an information was filed in the district court against certain property of the petitioner Weimer, situated in his rectifying house in Milwaukee, and the property was seized for condemnation. The causes of forfeiture as alleged in the information arose from violations of various sections of the Revised Statutes relating to such frauds upon the revenue as distinctly involve forfeitures of property.

In this proceeding, Weimer appeared as claimant and filed an answer to the information. After the seizure, he gave bond to answer for the property, to the extent of its appraised value, which was $1,346.25, and subsequently such proceedings were had in the forfeiture case, that the property was condemned as forfeited, and on the 2d day of March, 1876, judgment was entered against Weimer, and the stipulators in the bond for the amount of the bond, namely, $1,346.25 and costs, which judgment remains unsatisfied of record.

On the 20th day of July, 1875, Weimer was indicted with one John S. Taft, a revenue gauger, under section 5440 of the Revised Statutes, for a conspiracy to defraud the United States of the tax on distilled spirits then being in the rectifying house of Weimer, upon which the tax had not been paid, which conspiracy was alleged to have been formed and carried into effect in April, 1875. To this indictment there was a plea of not guilty. Upon trial, the defendants in the indictment were convicted, and Weimer was sentenced to pay a fine, and to imprisonment. While suffering such imprisonment pursuant to the sentence, he was pardoned by the president.

The case of the petitioner, Reynolds, was this: On the 1st day of May, 1875, certain property situated in the rectifying house of the petitioner and his partner, Burbach, was seized as forfeited to the United States. Subsequently, an information was filed against the property, in the district court, the alleged causes of forfeiture set forth in the information, being substantially identical with those recited in the information in the case of Weimer. Burbach & Reynolds appeared in the proceeding as claimants of the property, gave bond for its appraised value and filed an answer. Subsequently, decree of forfeiture and condemnation was rendered, and judgment against Reynolds and the stipulators in the bond was entered for $2,944.92 and costs, which judgment is unsatisfied of record. On the 20th day of July, 1875, Reynolds was indicted with Burbach and Taft for conspiracy, under section 5440. Upon trial of the defendants in the indictment, there was a conviction, and Reynolds was sentenced to pay a fine and to imprisonment. While the sentence was being executed, he was pardoned by the president, and discharged from further imprisonment. The parties, Weimer and Reyn-

olds, now present their separate petitions setting forth the foregoing. facts, and ask the court, because of the pardons granted to them in the criminal cases, to direct that satisfaction of the judgments in the forfeiture cases be entered.

Counsel for petitioners contend that as a consequence of the pardons, and by operation of law, the judgments in question became extinguished, and that their cancellation of record should be ordered by the court. Their argument is, that the pardons extend to and remit to the petitioners all penalties and all forfeitures of property which are denounced by any law of the United States, as a consequence of any crime or misdemeanor committed by the petitioners, at any time anterior to the date of the pardon, unless saved by exception appearing on the face of the pardon itself.

I cannot concur with counsel in giving to the pardons in these cases so broad a construction. The pardons recite the offense of which petitioners were convicted, namely, conspiracy to defraud the United States of the tax on distilled spirits, which recital is followed by a declaration of pardon. Now, though it be true that a full pardon is granted in each case, it is a pardon only of the offense specified in the preceding part of the instrument. The offense of conspiracy to defraud the United States, is entirely distinct from every other offense under the revenue laws, for which specific penalties and punishments are prescribed. The offense of conspiracy may be pardoned, and yet the offender may be liable to have his property forfeited because of other violations of law which do not constitute a conspiracy. Counsel for petitioners construe the pardons as if they had, in terms, pardoned all offenses, against the laws of the United States, which have any reference to the statutes relating to internal revenue. If such a general pardon could be sustained, it is clear that none such has been granted in these cases.

Concerning the general effect and operation of a pardon, there need be no dispute. The language of the opinion in Ex parte Garland, 4 Wall. [71 U. S.] 380. is clear and full upon that question: "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction, from attaching; if granted after conviction it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity."

It is to be borne in mind, however, that the offense here spoken of, is the precise offense of which the offender is pardoned, and none other. The punishment, penalties and disabilities referred to, are such as result from the identical offense of which the person is, in the eye of the law, by virtue of the pardon, made innocent. The restoration to former rights is commensurate only with the scope of the pardon, as it relates to the offense in the particular case.

Now, undoubtedly, the president may remit forfeitures and penalties. Judge Story was of opinion that the power of pardon was so general and unqualified that the power to remit fines, penalties and forfeitures was included in it. Story, Const. § 1504, and note. See, also, Osborn v. U. S., 91 U. S. 474. But in the present cases the president did not in terms, nor as I think. in legal effect, make such a remission. He only pardoned a distinct offense, specifically described in the instrument of pardon, and such a pardon cannot embrace any other offense for which separate penalties and punishments are prescribed.

Several cases decided by the supreme court of the United States, bearing upon the effect of a pardon, are cited upon the brief of counsel, as sustaining the present applications. In the Case of Garland, 4 Wall. [71 U. S.] 333. it was held that the pardon received by the petitioner restored him to his civil rights, including a previously acquired right to appear as an attorney and counselor in the federal courts. But the pardon, in terms. was "for all offenses by him committed, arising from participation, direct or implied, in the Rebellion;" and it was held that the effect of such a pardon was to relieve him from all penalties and disabilities attached to the offense of treason. So, in the Case of Armstrong's Foundry, 6 Wall. [73 U. S.] 766, in which it was held that the pardon granted to the party, relieved him from forfeiture of property employed in aid of the Rebellion, the pardon was of all offenses, and the consent of the owner to such use of his property was an offense, the penalty for which was forfeiture.

Again, in Osborn v. U. S., 91 U. S. 474, in which it was held, that the effect of the pardon in that case, was to restore to its recipient all rights of property lost by the offense pardoned. unless the property had, by judicial process. become vested in other persons, subject to such exceptions as were prescribed by the pardon itself, the pardon was as comprehensive in terms as in the cases previously noticed, and the decision is placed on the ground that the pardon covered the identical offenses for which a forfeiture of property had been decreed. So, again, in Knote v. U. S., 95 U. S. 149. the pardon was general, with an express restoration of all rights under the constitution and laws.

It is clear that these adjudications do not sustain the construction placed by counsel upon the pardon in the cases at bar. The principle established by these decisions. is, simply, that a pardon releases an offender from the consequences of the offense pardoned. and from the disabilities imposed by that offense. In other words, the penalties and forfeitures from which the person is released by a pardon, are

such as accrue from the particular offense or offenses embraced in the instrument of pardon. To affirm the doctrine urged in behalf of the present petitioners, is to say that though a pardon in terms and evident intent, only relieves its recipient from punishment for the offense therein named, nevertheless, in legal effect, it grants a release from the consequences of all offenses committed anterior to the date of the pardon, whatever may have been their nature, and however foreign to that which is expressed in the instrument of pardon. Such a view of the scope and effect of the pardons in the cases under consideration, is not maintainable. The application of petitioners is denied.

As to the effect of a pardon, see, also, U. S. v. Cullerton [Case No. 14,899].