## In re RINGNALDA.
### Petition No. 102844.

District Court, S. D. California,
Central Division.

Feb. 19, 1943.

976

Albert Del Guercio, District Director, Immigration and Naturalization Service, of Los Angeles, Cal., and Louis G. Tellner, Examiner, of Los Angeles, Cal., for the government.

YANKWICH, District Judge.

The petitioner, Wijbe Ringnalda, was born in The Netherlands on April 26, 1921. He has resided permanently in the United States since May, 1930. On February 10, 1942, he married a native citizen of the United States. He has applied for naturalization under the provisions of Section 310(b) of the Nationality Act of 1940, 8 U.S.C.A. § 710(b). The District Director, Immigration and Naturalization Service, has recommended the rejection of the petition on the ground that the petitioner has not proved good moral character for the period of three years immediately preceding the filing of the petition. The petition is dated October 16, 1942. Hence the three-year period would begin on October 16, 1939. The objection is grounded on the fact that on June 6, 1941, the petitioner was convicted in the Superior Court of the State of California for the County of Orange, for the violation of § 500 of the Vehicle Code, St.Cal.1935, p. 173—negligent homicide. The section reads: "500. Negligent Homicide. When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle in a negligent manner or in the commission of an unlawful act not amounting to felony, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the State prison for not more than three years."

No sentence was imposed on the defendant. On June 13, 1941, he was placed on probation for a period of one year. On June 15, 1942, the probation was terminated by the court which had granted it, the verdict of "guilty" was changed to "not guilty" and the case was dismissed, in accordance with the provisions of the "ex-punging of penalty" section of the California Penal Code, § 1203.4. The portion of this section, material here, reads: "Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, *shall at any time thereafter be permitted by the court to withdraw his plea of guilty and enter a plea of not guilty;* or if he has been convicted after a plea of not guilty, *the court shall set aside the verdict of guilty; and in either case the court shall thereupon dismiss the accusations or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted.* The probationer shall be informed of this right and privilege in his probation papers." (Italics added)

The problem which this factual background presents, therefore, is: Did the action of the Superior Court of California, in expunging the conviction, remove the stain on the petitioner's character?

In People v. Mackey, 1922, '58 Cal. App. 123, 130, 131, 208 P. 135, 138, the court, speaking of the effect of the expunging proceedings, said: "We cannot avoid the conclusion, however, that the Legislature intended in a legal sense, by directing a dismissal under such circumstances, *to wipe out absolutely the entire proceeding in question in a given case, and to place the defendant in the position which he would have occupied in all respects as a citizen if no accusation or information had ever been presented against him.* Such is the legal effect of the dismissal of a criminal charge before conviction, and we are convinced that the lawmaking body intended, by section 1203, that the same effect should attend a dismissal after conviction." (Italics added)

The court was considering the question whether, after proceedings under this section were had, the defendant could be impeached as a witness by reason of his conviction of a felony. The conclusion reached was that he could not be. This is logical, because, through these proceedings, the defendant stands cleared of guilt. His position is not unlike that of a person pardoned. A pardon is "a purging of the offense." Hay v. Justices of The Tower, 24 Q.B. 561, quoted in People v. Hardwick, 1928, 204 Cal. 582, 590, 269 P. 427, 59 A.L. R. 1480. It "takes away poenam et culpam".

Hale, 2 P.C. 278, quoted in People v. Hardwick, 204 Cal. 582, 591, 269 P. 427, 59 A.L.R. 1480. "A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity." Ex parte Garland, 1886, 4 Wall. 333, 380, 381, 18 L. Ed. 366. And see Knote v. United States, 1877, 95 U.S. 149, 24 L.Ed. 442; Ex parte Grossman, 1925, 267 U.S. 87, 120, 45 S.Ct. 332, 69 L.Ed. 527, 38 A.L.R. 131; United States ex rel. Palermo v. Smith, 1927, 2 Cir., 17 F.2d 534, 535; United States v. One Five-Passenger Ford Automobile, D.C. Wash. 1920, 263 F. 241.[1]

In naturalization proceedings some district courts have held that the effect of a pardon is "prospective rather than retrospective". In re McNeil, D.C.Cal.1936, 14 F.Supp. 394, 395. And see In re Spenser, 1878, 22 Fed.Cas. page 921, No. 13,234; In re Addis, D.C.Cal.1918, 252 F. 886; In re Demayo, D.C.Mo.1938, 26 F.Supp. 996.

I believe that these decisions give to a pardon a more restrictive effect than the cases just cited. However, granting their correctness in pardon cases, they do not apply to probation. This for the reason that the cases dealing with the probation statute under consideration recognize the retroactive effect of the expunging provisions, especially when no sentence is imposed. See Sherry v. Ingels, 1939, 34 Cal. App.2d 632, 633, 94 P.2d 77; Suspension of Hickman, 1941, 18 Cal.2d 71, 113 P.2d 1.

This conclusion accords with the general view, which obtains also in federal courts, that when we speak of a "conviction" from which disabilities flow, we refer to a conviction followed by the imposition of a sentence, which is the judgment in a criminal case. And where imposition of the sentence is stayed, there is no final judgment. See: Berman v. United States, 1937, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204; Crawford v. United States, 1930, 59 App.D.C. 356, 41 F.2d 979; In re Phillips, 1941, 17 Cal.2d 55, 58, 109 P.2d 344, 132 A.L.R. 644. Thus courts have held that before there can be a denial of the right to vote (People v. Fabian, 1908, 192 N.Y. 443, 85 N.E. 672, 18 L.R.A., N.S., 684, 27 Am.St.Rep. 917, 15 Ann.Cas. 100), deprivation of a license to practice a profession (Donnell v. Board of Registration of Medicine, 1930, 128 Me. 523, 149 A. 153), or impeachment of a witness (People v. Mackay, supra, Crawford v. United States, supra, Dial v. Commonwealth, 1911, 142 Ky. 32, 133 S.W. 976; Attorney General v. Pelletier, 1928, 240 Mass. 264, 134 N.E. 407; State v. Roybal, 1928, 33 N.M. 540, 273 P. 919; State v.

---

[1] What is said in the text of the opinion does not conflict with the decisions reached by the California Supreme Court in disbarment cases in which it held that the effect of conviction of a felony as a disbarment is not wiped out either by a pardon or by probation. In re Lavine, 1935, 2 Cal.2d 324, 41 P.2d 161; In re Phillips, 1941, 17 Cal.2d 55, 109 P.2d 344, 132 A.L.R. 644. § 6102 of the California Business and Professions Code, Deering's 1939 Supplement, p. 522, St. 1939, p. 357, commands that, upon receipt of a certified copy of a record of conviction of an attorney, of a crime involving moral turpitude, the Supreme Court "shall suspend" the attorney until the judgment in the case becomes final. When such finality is reached, the court "shall order" the attorney disbarred. The disbarment cases were decided under this provision and the further principle that the "penalties and disabilities" to which the probation statute refers "are those which it is within the power of the legislative branch of the government to release" (In re Phillips, supra, 17 Cal.2d at page 60, 109 P.2d at page 347, 132 A. L.R. 644), and that any interpretation which might allow the legislature to interfere with the power of the court to discipline its officers would infringe upon judicial prerogative. However, even in the exercise of this power, the court gives full recognition to the fact that when, in probation, the imposition of sentence is stayed, there is no final judgment on which a disbarment can be grounded. This was the ruling in the most recent case on the subject, Suspension of Hickman, 1941, 18 Cal.2d 71, 113 P.2d 1. The court distinguished In re Phillips, supra, and added: "In the present matter the 'imposition of judgment and sentence' was suspended and the defendant then placed on probation. In other words, the criminal proceedings were suspended prior to and without the imposition of judgment and sentence and no judgment of conviction was ever entered."

Spurr, 1925, 100 W.Va. 121, 130 S.E. 81) or other penalties, (State v. Pishner, 1914, 73 W.Va. 744, 81 S.E. 1046, 52 L.R.A.,N.S., 369; State v. Savage, 1920, 86 W.Va. 655, 104 S.E. 153·; State ex rel. Blake v. Levi, 1930, 109 W.Va. 277, 153 S.E. '587) by reason of conviction of an offense, the conviction or plea of guilty must be followed by the actual imposition of a sentence, i.e., final judgment. See note, 12 So.Cal.Law Rev.1939, 201. So that, when the Superior Court failed to impose any sentence in this case and, after the expiration of the probationary period caused the verdict of "guilty" to be changed to one of "not guilty", and dismissed the proceeding, there was no conviction of an offense involving moral turpitude affecting the character of the petitioner, upon which the Government can now ground its objection to admission to citizenship. See Suspension of Hickman, 1941, 18 Cal.2d 71, 113 P.2d 1; Sherry v. Ingels, 1939, 34 Cal. App.2d 632, 633, 94 P.2d 77.

But it is urged that the proceedings· leading to probation and its termination "do not and cannot wipe out the fact of the arrest, the fact of conviction or plea of guilty, and the fact of sentence, whether of imprisonment, fine or probation."

■ In granting probation, the court may, under California State Law, either stay imposition of sentence or stay its execution. California Penal Code 1941, Secs.. 1203, 1203.1. The former procedure was followed in this case. The probation period is not a sentence. And insofar as the argument presses the distinction between *the fact* of conviction and *the judgment* of conviction, it lacks force. For once the state court record of arrest, conviction, and probation is wiped out, as was done·here, there is *no proof* before this court of any of the facts relating to the accident and there is *no fact* before this court showing any delinquency on the part of the petitioner. To establish such facts, they would have to be proved by competent evidence, *dehors* the expunged record. See, Sherry v. Ingels, 1939, 34 C.A.(2) 632; Suspension of Hickman, 1941, 18 Cal.(2) 71. Naturalization, of course, is a privilege, not a right. I had occasion to discuss its nature quite recently in United States v. Bergmann, D.C.Cal., 1942, 47 F.Supp. 765. I need not repeat what I said there on the subject or about the duty of a petitioner for naturalization to show strict compliance with all the conditions imposed by the Congress.

However, we should not deprive an alien, otherwise worthy, of this privilege by attaching to one of his acts a disability which the sovereign against whom he. committed it has fully and entirely forgiven and wiped out.[2]

---

[2] The injustice of depriving this young man of citizenship because of this conviction is illustrated by a recent letter from the Probation Officer of Orange County directed to the District Director, which reads:

January 12, 1943

"Mr. Albert Del Guercio
District Director
Immigration and Naturalization Service
Los Angeles, California

  "Att'n: Howard L. Field

  "Re   : Wilbur Ray Ringnalda
        Your No. 246/P/102844

"Dear Sir:

  "On June 6, 1941, in the Superior Court of this County the above subject was convicted of violation of Section 500 of the Vehicle Code. In investigating the subsequent application for probation, we determined that he had never before been arrested and that he had an excellent prior record and reputation.

  "Briefly, the circumstances of his crime are that he was operating a motor vehicle in this County and that he failed to observe a boulevard stop sign and collided with another automobile. In the accident one of the occupants of the other car was killed. At the time of the accident Ringnalda was driving approximately forty miles per hour and he had not been using intoxicants. He cooperated with the authorities to the fullest extent throughout the entire proceedings.

  "After the coroner's jury brought in the verdict of the death of the deceased person being caused by negligence on the part of Ringnalda, he was arrested. He was booked into the County Jail, but was released immediately on his own recognizance.

  "On June 6, 1941, *he was placed on probation for one year and was not required to serve any time in jail. We regard his violation of the law as being strictly of a technical nature.* While on probation he made good and he was duly dismissed on June 15, 1942.

          "Very truly yours,
            "D. R. McMillan
            "Probation Officer
              "James A. Musick, Assistant."
                (Italics added.)

"JAM: rc

Thus the state officers who are charged with the duty of recommending to the court probation and its termination, see

The objection of the District Director, Immigration and Naturalization Service, to the granting of the petition will be overruled and the petitioner will be admitted to citizenship upon taking the required oath. Exception allowed.

in the facts surrounding the conviction nothing more than a technical violation, despite the fact that loss of life resulted. And yet we are asked to overlook this opinion of those who know the facts best and to consider this incident a blot upon the petitioner's character, and deny him naturalization at this time. Both reason and humanity call for a contrary conclusion.